Mary Brown v. Sam Lazarus et al.

No. 239.

1. Evidence—Proof of Heirship by Declarations of Heir.—Before declarations of heirship made by an heir can be admitted in evidence, the relationship of the declarant to the family must be established by other evidence than the declarations; but such proof need establish only a prima facie case, and slight proof will suffice where there is identity of names, great lapse of time, and other corroborating circumstances.

2. Practice on Appeal where Evidence Below was by Deposition. The fact that the evidence before the trial court was all by deposition, does not change the rule that the appellate court will defer to the lower court in weighing the evidence, and will not disturb the judgment unless it is clearly wrong.

3. Registration—Tract of Land Lying in Two Counties.—Where a tract of land lies across the line of two contiguous counties, the record in either county of a conveyance of the tract is notice also as to the part lying in the other county.

Appeal from Wichita.    Tried below before Hon. George E. Miller.

*J. A. Templeton* and *Swan & Swain*, for appellant.—1. The declarations of Andrew L. Castleman and Michael D. Castleman, under whom the appellees claim, as testified to by the witnesses E. J. Gurley and M. D. Herring, and as contained in the recitals of the deeds, were hearsay and inadmissible for any purpose, until the relationship of such declarants to the family of Patience Castleman was first established otherwise than by the declarations themselves. Blackburn v. Crawford, 3 Wall., 175–196; 7 Am. and Eng. Encycl. of Law, 74; 5 Am. and Eng. Encycl. of Law, 362; Abb. Trial Ev., 91, 92, sec. 36.

2. The declarations were made after a controversy had arisen over the ownership of the certificate by virtue of which the land in controversy was located, were hearsay, were self-serving, and were inadmissible for any purpose. 1 Greenl. on Ev., sec. 131; Wood's Prac. Ev., 262–264; 7 Am. and Eng. Encycl. of Law, 74; 5 Am. and Eng. Encycl. of Law, 362; Abb. Trial Ev., 95, sec. 40.

3. Where the witnesses are not present at the trial, but their testimony is taken by deposition, and the trial court has no opportunity to see them and hear them testify in person, no particular weight should be given to the judgment of the trial court upon the testimony, but this court should render such judgment as the law and the facts of the case may warrant. Thorn Heirs v. Frazer Heirs, 60 Texas, 263; Henderson v. Jones, 2 Posey's U. C., 230.

*Boyd & Ofiel*, and *Head & Dillard*, for appellees Lazarus and the Western Mortgage and Investment Company.—1. The relationship of Andrew

L. and Michael D. Castleman to John K. and Patience Castleman was sufficiently shown by the other evidence to make their declarations as to pedigree and relationship admissible. Lander v. Schluter, 78 Texas, 103; Primm v. Stuart, 7 Texas, 178; Chamblee v. Tarbox, 27 Texas, 139; Robertson v. Du Bose, 76 Texas, 1; McNeil v. O'Connor, 79 Texas, 227; 1 Whart. on Ev., 202–205.

2. No such controversy had arisen over the ownership of the certificate by virtue of which the land in controversy was located, as would render inadmissible the declarations referred to in these assignments, especially under our statute permitting parties to testify. 1 Whart. on Ev., 213, 214.

3. Where the land is one tract, and lies across the dividing line between two counties, the record of the deed in either county is constructive notice as to the whole tract. Rev. Stats., arts. 4333, 549; Hancock v. Lumber Co., 65 Texas, 225; Horsley v. Garth, 2 Gratt., 471.

*J. H. Cobb*, for appellees Lang, Templeton, and Jones.—Where a tract of land lies partly in two counties, and that part of it lying in the first county is levied upon and sold under execution, a purchaser at such execution sale is not affected with constructive notice of a deed from the defendant in the writ, conveying the whole of said tract, and recorded only in the second county. 1 Dev. on Deeds, sec. 664; Horsley v. Garth, 44 Am. Dec., 393.

STEPHENS, Associate Justice.—Appellant, Mary Brown, by this suit sought to recover, as sole heir of Patience Castleman, from appellees, who claimed under Michael D. and Andrew L. Castleman as the true heirs, the league of land in controversy, consisting of two tracts, situated, one in Wichita County and the other in Wichita and Archer counties.

The contention of appellant is, (1) that the proof of heirship offered by appellees, in so far as they sought to establish that those under whom they claimed were the true heirs of Patience Castleman, the common ancestor, by the declarations of Michael D. and Andrew L. Castleman, was inadmissible; and (2) that the findings of the court against the heirship claim of appellant and in favor of that of appellees were not supported by the evidence.

Appellant, to maintain the issue on her part, undertook to prove, that after the death of her mother, her father, William McDaniel, married Sarah Castleman, the surviving widow of John K. Castleman, son of Patience Castleman; that a single child, John McDaniel, was the issue of this marriage, who died without issue, after the death of his mother and before the death of his father; that at the death of this child, all the descendants of Patience Castleman were dead, including the children of John K. Castleman, the last of whom, she claimed, died pending this second marriage of her father.

The theory of appellees was, that no such child ever lived; but if there ever was such a child, that Michael D. Castleman, son of Patience, and Andrew L. Castleman, son of John, one or both, survived him, and were the sole heirs of Patience when they assigned their rights as such heirs, about the year 1855, to those under whom appellees claimed. In pursuance of this transfer of the Patience Castleman certificate, the lands were afterwards located, and, in the year 1867, patented. It was contemporaneous with this transfer, and principally in connection therewith, that the declarations, both written and oral, objected to, were made, which was more than thirty years before this controversy arose.

The certificate was granted to John K. Castleman as the administrator of the estate of Patience Castleman, about the year 1848, and after the death of said John K., which occurred in the year 1840, was withdrawn from the probate records of Montgomery County, where it had been on file among the papers pertaining to the Patience Castleman estate, and turned over to a Mr. McCown for a Mrs. Sarah Castleman, who afterwards died at his house in the year 1855. Soon after her death, which was contemporaneous with his, it was obtained by those under whom appellees claim from the representatives of the McCown estate. It was undisputed that Patience Castleman left a son named Michael, who survived John K., and that of the three sons of John K.—James, John, and Andrew—the last named was the survivor.

Appellees proved by witnesses residing in Falls County, that from about 1851 to 1856 or 1857 there lived in that county two men, since deceased, known and called Michael D. and Andrew L. Castleman; and by one of these witnesses, that they recognized each other as relatives, the latter as the nephew of the former. On the other hand, it was in proof by a witness for appellant, who had no personal knowledge of any other member of the Castleman family, but whose evidence was corroborated, that "Mike Castleman" died in Fayette County in the year 1845, and that by family report in the McDaniel family, of which Sarah Castleman had become a part, Andrew died in the State of Arkansas, in the year 1846; and that by such report, and the testimony of appellant and daughter as well, Sarah McDaniel died in Houston County, in August, 1849, from fright resulting from her little 3 or 4 years old son John being bitten by a large rattlesnake, of which he died in a few hours after his mother.

Appellees introduced evidence tending to show, that William McDaniel deserted his wife Sarah, and that that marriage was without issue. The Sarah Castleman who died at McCown's claimed to have a son Andrew, who, she complained, had entirely neglected her, and a young man of that name, as claimed by him. appeared at McCown's soon after her death, inquiring about his mother. She made no mention while at McCown's of the McDaniel name.

In this state of the proof appellees were permitted to read in evidence

the declarations, both verbal and written, made by Michael and Andrew Castleman about the year 1855, to the effect that they were descendants, the former the son and the latter the grandson, of the Patience Castleman to whom the certificate was granted. The first objection interposed by appellant was, that the declarations were inadmissible, because there was no proof outside of the declarations themselves of the relationship of the declarants to the family of Patience Castleman.

The rule on this subject is, we think, correctly stated by Mr. Wharton, as follows: "Before such declarations, however, can be admitted, the relationship of the declarant to the family must be proved by other evidence than his declarations; for it would be a petitio principii to say that his declarations are receivable because he is a member of the family, and he is a member of the family because his declarations are receivable. Such preliminary proof, however, need establish only a prima facie case; and it is said ' that but slight proof of the relationship will be required, since the relationship of the declarant with the family might be as difficult to prove as the very fact in controversy.' " 1 Whart. on Ev., sec. 218.

This principle seems analogous to that applied in laying a predicate for the introduction of the declarations of an agent. While the authority of the agent can not be proven by his declarations, it is not required that the proof of agency be full and' satisfactory before his declarations are admissible. If competent evidence has been introduced tending to prove the agency, that will be sufficient. Stiff v. Fisher, 2 Texas Civ. App., 346.

In view of the great lapse of time since the assertion of title to the certificate was made, and of the fact that the declarations were made in connection therewith, and so soon after the alleged death of appellant's stepmother, and of the identity of names and other circumstances above indicated, we are of opinion that there was no error in admitting the testimony. The evidence aliunde certainly tended to connect Michael and Andrew Castleman with the Patience Castleman for whose benefit the certificate was granted, and their declarations as to matters of pedigree were therefore competent. The fact also that persons bearing those names lived at that early day, declaring themselves to be descendants of said Patience, tended, we think, to rebut the testimony of appellant that the direct lineage of that family was then extinct. Hickman v. Gillum, 66 Texas, 314; Robertson v. Du Bose, 76 Texas, 1; McNeil v. O'Connor, 79 Texas, 227.

The second objection, that the declarations were made after a controversy had arisen over the ownership of the certificate, and were therefore self-serving, if tenable in any case since interest has ceased to disqualify a witness (1 Wharton on Evidence, sections 213, 214), must be overruled in this case because not sustained by the record. If any controversy had arisen, there was no evidence that it involved the question of heirship litigated herein, but rather to the contrary. It seems improbable that any

serious contention on that subject could have arisen so soon after the deaths of Sarah Castleman and others, as claimed by appellant. If such question arose, then appellant, who must have been fully apprised of the existing facts as to heirship, has allowed it to slumber for nearly forty years, only to assert her rights long after becoming the sole survivor of both the Castleman and McDaniel families, against those who have acted and relied on said declarations during that long period. Under such circumstances, we hardly think it should lie in her mouth to object that the declarations were not made ante litem motam.

" The further objection, that some of these declarations stated conclusions of law, should not have excluded them all, and would not require a reversal of the judgment, as the case was tried before the court without a jury. For the same reason, if other evidence objected to was erroneously admitted, being merely irrelevant, it was harmless. 61 Texas, 99.

This brings us to the sufficiency of the evidence to support the court's conclusions of fact. It is insisted, that inasmuch as the evidence was all by deposition, no particular weight should be given the judgment of the trial court, but this court should render such judgment as the law and the facts of the case may warrant. We do not understand this to be the rule laid down for the procedure of this court. The trial is not de novo here, but material error in the proceedings below must be shown before the judgment appealed from will be reversed. While it has been held, for manifest reasons, that the verdict of the jury or judgment of the court is not conclusive on the question of the credibility of the witnesses where they testify by deposition, we know of no case holding that the appellate tribunal is not to defer to the judgment of the court of first instance in weighing the evidence, even though entirely read from depositions.

The main conclusion found by the court, that appellant had not established her heirship, does not seem to us to be against the great preponderance of the evidence, though we may not be able to approve all the minor conclusions, and though we might have reached a different conclusion upon the same evidence. As we are not able to declare it to be clearly wrong, when all the testimony, which was somewhat conflicting and tended to opposite conclusions, is fairly considered, it must be allowed to stand as our conclusion. This leads to an affirmance of the judgment so far as appellant is concerned.

From so much of the judgment as denied appellees Lazarus and the Western Mortgage and Investment Company, Limited, a recovery against the other appellees of that part of the tract of 3111 acres which is situated in Wichita County, they have prosecuted a cross-appeal. They claim as purchasers under a deed of trust, which was duly recorded in Archer County, where about one-half of said tract of land is situated. The other appellees claim as purchasers at execution sale, made in Wichita County,

by virtue of a levy subsequent to the registration of the deed of trust in Archer County, of which deed of trust the plaintiff in execution had no actual notice at the date of the levy. The entire tract of land was described in the patent and in the subsequent conveyances, including the deed of trust, as situated in Archer County, but with the field notes therein set out.

Article 4333, Revised Statutes, provides, that "All deeds, conveyances, mortgages, deeds of trust, or other written contracts relating to real estate, which are authorized to be recorded, shall be recorded in the county where such real estate *or a part thereof* is situated." The succeeding article provides, that " Every conveyance, covenant, agreement, deed of trust, or mortgage in this chapter mentioned, which shall be acknowledged, proved, or certified according to law, and delivered to the clerk of the proper court to be recorded, shall take effect and be valid as to all subsequent purchasers for a valuable consideration without notice, and as to *all creditors*, from the time when such instrument shall be so acknowledged, proved, or certified, and delivered to such clerk to be recorded, and from that time only."

The language of these articles indicates very clearly, we think, that when the holder of the deed of trust had it recorded in Archer County, where all the land purported to be situated, and where " *a part*" (one-half) of the entire tract was situated, the statute was fully complied with, and the lien thereby secured must be protected against " all creditors," as therein provided. The tract being a unit, record in either county would be sufficient constructive notice. The language employed by the present Chief Justice of our Supreme Court in Hancock v. Tram Lumber Company, 65 Texas, 232, in construing this statute, while not necessary to a decision of that case, seems to us to state the rule correctly.

It follows, therefore, that as to so much of this tract as lies in Wichita County, the judgment must be reversed and here rendered, in accordance with this conclusion, for the entire tract in favor of said appellees, who recovered only that part which is situated in Archer County.

> *Affirmed as to appellant, and reversed and rendered for appellees Lazarus and the Western Mortgage and Investment Company, Limited, against the other appellees.*

Delivered October 25, 1893.

A motion for rehearing was denied.

Justice HEAD did not sit in this case.

This case did not reach the Reporter with the October cases.