[Sac. No. 1733. Department One.—January 24, 1910.]

In the Matter of the Estate of WILLIAM HARTMAN, Deceased.

ESTATES OF DECEASED PERSONS—EVIDENCE—RELATIONSHIP WITH TESTA-TOR.—On an appeal from an order distributing an estate, the evidence is reviewed and held sufficient to support the finding that the distributee was a niece and an heir of the testator.

ID.—PROOF OF MARRIAGE—LEGITIMACY OF CHILD.—In a proceeding involving the establishment of relationship with a testator, testimony that a man and a woman, having the same surname, lived together as husband and wife, that they always called a child who lived with them their child and their daughter, and that she called them father and mother, is sufficient *prima facie* evidence of their marriage and of her legitimacy.

ID.—RELATIONSHIP AS BROTHERS—EVIDENCE—PRESUMPTIONS OF LEGITIMACY AND IDENTITY OF NAME.—In such a proceeding, evidence that two men, having the same surname, called each other brother, that each spoke to the other by his first name, and that their conversation and conduct indicated relationship and was consistent with the fact that they were brothers, suffices to establish the fact of such relationship. The presumptions of legitimacy and from the identity of name supply the fact that they were legitimate children of the same father.

ID.—DECLARATIONS OF MEMBER OF FAMILY AS TO RELATIONSHIP WITH TESTATOR—ABSENCE OF PRELIMINARY PROOF.—Declarations made by a father to his daughter, during the lifetime of a testator, to the effect that the testator was his brother, are admissible in evidence to prove that the declarant and the testator were brothers, and that the person to whom the declarations were made was the niece of the testator, notwithstanding there was no other preliminary proof of the relationship.

ID.—DECLARATIONS AS TO FAMILY RELATIONSHIP, WHEN ADMISSIBLE.—Such declarations are rendered competent from reasons of necessity, but as a safe-guard against the possibility of their being declarations in the interest of the party making them, it is required that they must have been made before any controversy over property arose. To satisfy the rule that the best evidence must be produced and to show necessity, it is a condition to their admission that the declarant is dead at the time they are offered, or out of the jurisdiction; and they are sometimes excluded when there are living persons whose testimony on the subject could be produced.

APPEAL from an order of the Superior Court of San Joaquin County distributing the estate of a deceased person, and from an order refusing a new trial. Frank H. Smith, Judge.

The facts are stated in the opinion of the court.

E. E. Parlin, for Appellant.

O. B. Parkinson, for Respondent.

Aylett·R. Cotton, for Executor.

SHAW, J.—The record presents two appeals, one from an order distributing the estate of William Hartman, deceased, and the other from an order denying a new trial of the matter.

By the provisions of his will the deceased left the sum of two thousand dollars to the Stockton Branch of the California Conference Association of the Seventh Day Adventists, and the entire residue of his estate to the said California Conference Association of the Seventh Day Adventists. The petition for distribution stated these facts and asked distribution accordingly. The last-named body is an eleemosynary or charitable corporation and it includes the so-called Stockton branch, named as the recipient of the two-thousand-dollar legacy. Hartman executed said will more than thirty days before his death. He died on February 8, 1904. Annie Hartman Burns appeared and filed a counter petition for distribution, alleging that she is the daughter of Peter Hartman, deceased, and that Peter was a brother of the testator, William Hartman, that she is an heir of the testator, that the gift of the entire estate to said charitable corporation is void, under section 1313 of the Civil Code, except as to one third thereof, and asking that the two thirds be distributed to her as the only heir. The corporation appeared and denied her relationship to the testator. The court found that she is a niece of the testator, as alleged, and his only heir at law. Distribution was made, accordingly, of two thirds to her and one third to said corporation, two thousand dollars thereof being for the use of the Stockton branch. The corporation is the appellant.

The main question presented is the sufficiency of the evidence to support the finding that Annie Hartman Burns is a niece of the testator. We think there was evidence justifying that conclusion. A brief statement of the facts which the evidence tends to prove will show its sufficiency.

William Hartman came to San Joaquin County prior to 1864 and continued to reside there until his death. So far as

known, he never married and left no children. He was a native of Hanover, Germany, and was naturalized in 1866. In 1864 he boarded at a hotel in Stockton, California, kept by Jacob Byer, now of Lancaster, New York. He told Byer at that time that he came from Lancaster, but did not say whether it was in New York or Pennsylvania. In 1862, Peter Hartman lived at Lancaster, New York. He and one William Hartman were together there at that time, in presence of E. J. Silvernail. They called each other brother, and by their first names, William and Peter. William talked of going to California and was trying to persuade Peter not to enlist in the army of the United States. Peter enlisted and in July, 1862, he and Silvernail's father, who had enlisted in the same company, were both injured by lightning and were sent home to Buffalo on furlough. Silvernail and William Hartman met the two injured soldiers at Buffalo. Again Peter and William addressed each other as brothers and William helped Silvernail to take his father from the train. Many years afterwards, Silvernail, in behalf of his father, who was applying for a pension, ascertained from an army comrade that William Hartman was in Stockton, California, and wrote to him to get his affidavit as to the injury of the elder Silvernail, reminding him of the occurrence at Buffalo in 1862, and stating to him that the elder Silvernail was an army comrade of Peter Hartman, his brother. The letter was addressed to William Hartman at Stockton, California. William answered the letter, saying that he well remembered helping to carry Silvernail, the elder, from the train at Buffalo in 1862. Again about 1897, Silvernail sent another letter to William Hartman addressed to Stockton, California, and William wrote another letter to Silvernail and at that time made affidavit to the facts. This affidavit and the two letters were sent to the pension office at Washington and were not produced. Silvernail, on being shown a photographic copy of the signature of William Hartman to his will, testified that it was in the same handwriting as the signatures to said letters and affidavits. The elder Silvernail could not read and the witness had read the letters and affidavits more than once. He described William Hartman, as he remembered him, and his description was similar to that of the testator. No other William Hartman had ever been known to reside in San Joaquin County. Annie

Hartman Burns testified that she was the daughter of Peter Hartman and Mary Hartman, who were husband and wife, that she was born on January 22, 1868, at East Aurora, that her father died at Cowlesville, New York, in 1879, that her mother died in 1903, that she had no living brother, sister, or other relative to her knowledge, that her father had told her he had a brother named William Hartman, who had gone to California at the time of the Civil War, and who lived there, that he had received letters from William Hartman, that he several times spoke of having a brother William, in California. East Aurora, Cowlesville, and Lancaster are towns in western New York a few miles apart.

There was no contradictory evidence except a statement in William Hartman's will as follows: "I have no living relatives to inherit anything from my estate," (see *Pearson* v. *Pearson*, 46 Cal. 628), and the testimony of John C. Miller, his executor, that frequently the testator said he had no living relatives and that the testator never had spoken to the witness about having had a brother. The evidence of the relationship of Annie Hartman Burns was clearly sufficient to identify her as the niece of the testator. It does not appear that Peter ever wrote to William Hartman, and it might well be that William was not aware that Peter left a surviving daughter. At most, these declarations by the testator would only create a conflict in the evidence, which the court below decided in favor of the niece, a decision which concludes this court.

The testimony that Peter Hartman and Mary Hartman lived together as husband and wife, that they always called Annie, who lived with them, their child and their daughter, and that she called them father and mother, is sufficient *prima facie* evidence of their marriage and of her legitimacy. (Code Civ. Proc., sec. 1963, subds. 28, 30, 33.) So, also, the fact that William and Peter Hartman called each other brother, that each spoke to the other by his first name, and that their conversation and conduct indicated relationship and was consistent with the fact that they were brothers, suffices to establish the fact of such relationship. The presumptions of legitimacy and from the identity of name supply the fact that they were legitimate children of the same father. (*Lee* v. *Murphy*, 119 Cal. 268, [51 Pac. 549, 955]; *Garwood* v. *Garwood*, 29 Cal. 520; *Carleton* v. *Townsend*, 28 Cal. 221.) Evidence of eye-wit-

nesses to the marriage ceremony, and to the births, can seldom be obtained to prove relationship and legitimacy, in such cases, and for that reason and others the law accepts secondary evidence and indulges in presumptions, where better evidence is not produced.

.The appellant is not interested in the question whether or not there are other collateral relatives. If Mrs. Burns is an heir it cannot take more than one third of the estate. If there are other kin, they, alone, have a right to attack the distribution of the two thirds to her as sole heir.

The declarations of Peter Hartman to his daughter, made in the lifetime of William Hartman, that he had a brother William in California, were properly admitted in evidence to prove the relationship. The appellant on this point cites the. rule given in Taylor on Evidence and in some of the decisions on the question. Taylor states it as follows: "Before, however, a declaration can be admitted in evidence, the relationship of the declarant with the family must be established by some proof other than the declaration itself." (1 Taylor on Evidence, 640.) To this Mr. Wharton adds: "for it would be a *petitio principii* to say that the declarations are receivable because he is a member of the family, and he is a member of the family because his declarations are receivable." (1 Wharton on Evidence, sec. 218.) On the other hand, however, it seems absurd to require, as a foundation for the admission of the declaration, proof of the very fact which the declaration is offered to establish. The preliminary proof would render the main evidence unnecessary. There are statements in the cases which seem to recognize a rule thus rigid and absurd. (*Wise* v. *Wynn,* 59 Miss. 588, [42 Am. Rep. 381]; *Anderson* v. *Smith,* 2 Mackey, (D. C.) 381; *Blackburn* v. *Crawford,* 70 U. S. 187.) But, for the most part the statements to this effect in the opinions mean no more than that the declarations of persons not of kin, either to the claimant or to the person from whom descent is claimed, cannot be admitted to prove kinship. (See *Rulofson* v. *Billings,* 140 Cal. 459, [74 Pac. 35]; *Estate of James,* 124 Cal. 661, [57 Pac. 578, 1008].) In *Estate of Heaton,* 135 Cal. 387, [67 Pac. 321], the rule for which appellant contends was referred to only to say that it was not applicable to the case; the question was not involved nor decided. In the present case it was sufficiently shown that

Peter Hartman was a member of the family, within the meaning of the rule. Annie Hartman Burns, his daughter, is the claimant and she testified to the relationship between herself and Peter Hartman. On this question the latest edition of Greenleaf on Evidence says: "It is sometimes said that where, for example, the question is whether A is B's heir, the declarant must appear to be related to B, and not merely to A; this seems erroneous, however, since all relationship is mutual, and the question whether A is related to B or a member of B's 'family' is also and just as much a question whether B is related to A or a member of A's family, and on this point a person claiming to belong to A's family is competent to speak; the circumstance that the estate to be claimed is in A's or B's family being immaterial." (1 Greenleaf on Evidence, 16th ed., sec. 114c.) Mr. Wigmore treats the question at greater length, as follows:—

"It follows, in applying the foregoing principle, that where an alleged relationship between Doe and Roe is to be testified to, a relation of Doe may speak to it, because it concerns the relationships of Doe's family, while a relation of Roe may equally speak to it, because it concerns the relationships of Roe's family; hence, all that is required of the declarant is a *connection with either one or the other,* but *not with both.*

"This truth, however, has been obscured by what must be regarded as erroneous rulings. The question being whether Doe is related to Roe (for example, so as to share in Roe's inheritance), the argument has been that it would be idle to require merely that the declarant should be shown to be related to Doe alone, because then any family could connect itself with any other by its members' mere assertion of the relationship. But the proper way to approach the question seems to be a different one, and is as follows: Any member of Doe's line may declare as to the relationships (i. e. memberships) of that family, and any member of Roe's line may declare as to the relationships (i. e. memberships) of that family; and the qualifications of the declarant, as such member, must of course be shown beforehand, like the qualifications of any witness (*ante* sec. 1486). Thus, before declarations of a supposed member of Doe's family can be admitted, the declarant's membership in Doe's family—for example, that he is Doe's son— must be shown. But that is the whole effect of this require-

ment. The further question, if any, is, whether a declaration of Doe's son that Doe is related to Roe (for example, is Roe's cousin) *is a declaration as to Doe's family at all,*—i. e. whether it is not, for the case in hand, solely a declaration about Roe's family relationships, as to which Doe's son is by hypothesis not yet shown to be a qualified declarant. Now the state or condition of relationship must always in effect, though not in form, be double or mutual; i. e. the fact that Doe is cousin to Roe is also the fact that Roe is related as cousin to Doe; hence, a statement of Doe's son that Doe is cousin to Roe, though in one form an assertion of Roe's relationships, is also equally a declaration that one of the relations of Doe (i. e. one of the members of Doe's family) is Roe,—for example, that one of the grandsons of Doe's grandfather is Roe. It is therefore a declaration upon which Doe's son is qualified to speak. The doubt, then can only be as to whether it should make any difference that in the case at hand it is Roe's descendants who are seeking Doe's estate, or Doe's who are seeking Roe's estate. This surely cannot affect the evidential value of the declarations; for that must depend on the circumstances at the time of making, and no one has ever contended that, apart from the *lis mota* and kindred limitations (*ante* secs. 1483, 1484), it makes any difference whether a parent belongs to a poor or obscure branch of the family or to a rich and notorious one. Moreover, it is usually at a later day only that it has become apparent which branch would have a pecuniary interest in connecting itself with the other. The difference, then, is a matter of the form of the statement only, and such assertions as the above must be treated as in substance declarations as to Doe's family relationships; whether it is Doe's or Roe's family that now happens to be seeking the inheritance is immaterial." (2 Wigmore on Evidence, sec. 1491.)

The following cases are in accord with this doctrine: *Sitler* v. *Gehr,* 105 Pa. St. 577, [51 Am. Rep. 207]; *Fowler* v. *Simpson,* 79 Tex. 614, [23 Am. St. Rep. 307, 15 S. W. 682]; *Louder* v. *Schluter,* 78 Tex. 105, [14 S. W. 205, 207]; *De Leon* v. *McMurray,* 5 Tex. Civ. App. 283, [23 S. W. 1038]; *Brown* v. *Lazarus,* 5 Tex. Civ. App. 84, [25 S. W. 71]. The confusion seems to have arisen from the idea that such declarations were competent as admissions against interest. They do not derive their evidential value or competency from that consideration.

They are admitted from reasons of necessity, because otherwise it would frequently be impossible to prove the kinship of members of a family after those who knew the facts are dead. Their evidential value comes not from their being admissions against the interest of the person making them, but, as Wigmore points out, from "the probability that the 'natural effusions' (to use Lord Eldon's often-quoted phrase) of those who talk over family affairs when no special reason for bias or passion exists are fairly trustworthy." (2 Wigmore on Evidence, sec. 1482.) "The evidence is in its nature of an unsuspicious kind; it is generally brought from remote times, when no question was depending or even thought of, and when no purpose would apparently be answered." (*Rex* v. *Eriswell*, 3 Term. Rep. 720.) Such declarations are safe-guarded against the possibility of their being declarations in the interest of the party making them by the requirement that they must appear to have been made before any controversy over the property arose. To satisfy the rule that the best evidence must be produced and to show necessity, it is made a condition of their admission that the declarant is dead at the time they are offered, or out of the jurisdiction; and they are sometimes excluded when it appears that there are living persons whose testimony on the subject could be produced.

The orders appealed from are affirmed.

Sloss, J., and Angellotti, J., concurred.

Hearing in Bank denied.