In re Estate of Mary. F. Frey.

ROBERT F. FREY et al., Appellants, v. WILLIAM C. THOMAS, Intervener, Appellee.
No. 39767.

APRIL 2, 1929.

*Dunshee & Brody*, for appellants.

*Walter Canaday* and *F. W. Ganoe*, for appellee.

WAGNER, J.—Mary F. Frey, a widow, died intestate ·in

Boone County, Iowa, in November, 1925. An administrator of her estate was appointed, and on January 19, 1927, he made and filed his final report as such officer, and suggested a distribution of the estate among Robert F. Frey, Clarence Frey, and Martha Turner, the three known children of the deceased. The claimant, William C. Thomas (Painter), filed objections to the final report of the administrator, averring therein, in substance, that he is the legitimate son of William F. Thomas and Mary F. Frey, deceased, formerly Mary F. Thomas, whose maiden name was Mary F. Reed; that his parents were married at Brazil, Indiana, on or about the 22d day of March, 1868, and he was born on or about the 12th day of July, 1870; that the administrator of said estate has failed to include him in the list of heirs at law of said deceased: and he asks that the court order the administrator to include and record him as one of the heirs, and that said officer be ordered to make distribution to him of his proportionate share of the estate. The three Frey children appeared, and resisted the order as prayed by the claimant. Upon trial, the court found for the claimant, and ordered and adjudged that the administrator include the claimant as one of the rightful heirs, in making distribution of the assets of said estate. From the findings, order, and judgment of the trial court, the Frey children have appealed.

The questions involved in this controversy are: Has it been established by competent evidence that the deceased in 1870 had a son, and that the claimant is such son?

It is undisputed that William F. Thomas and Mary F. Reed were married at Brazil, Indiana, March 22, 1868, and that they had a daughter, Annie, who was born December 6, 1868. The record is quite persuasive that a boy, Willie, was born in 1870. We will hereinafter refer to some of the evidence bearing thereon. On April 24, 1871, Mary F. Thomas was by the proper authorities of Clay County, Indiana, in which Brazil is situated, adjudged to be insane, and committed for treatment to the Indiana State Hospital for the Insane. There she remained until the time of her discharge, on July 5, 1876. Undoubtedly, the husband and wife had a stormy married career. In the latter part of the year 1870, or the early part of the year 1871, the husband came to Boone, Iowa, the home of his parents, bringing the little girl with him. In October, 1874, he was granted a de-

cree of divorce from his wife by the court of Boone County. It will be observed that this decree was obtained while his wife was insane. The validity of the decree is none of our concern in the determination of the matters before us. He was remarried, and thereafter migrated to Nebraska, never returning to Iowa, and died February 7, 1923. By his second marriage there are two sons living. He left the daughter by his first wife in the Thomas home in or near Boone. Sometime prior to October 15, 1890, said daughter married Thomas F. Duffy, and this couple made their home at Milwaukee, Wisconsin, until January 19, 1894, when she—the wife of Duffy and the daughter of William F. Thomas and Mary F. Thomas Frey—died.

Upon her discharge from the asylum, Mary F. Thomas first went to the home of her half sister at Bedford, Indiana, but later returned to Brazil, where she worked as a maid in the home of Major Carter, a lawyer, for three years, and probably longer. About 1882, she left Indiana, and came to Boone, Iowa. Here she found her daughter, and ascertained the facts as to her husband's divorce and remarriage. Probably realizing the doubtfulness of the validity of the decree of divorce formerly granted her husband, she, in 1885, instituted in the Boone County court an action for divorce against her husband. In her sworn petition for divorce, she states that the fruits of her marriage with William F. Thomas are a girl, Anna (Annie), and a boy, Willie. In November, 1885, she was granted a decree of divorce, giving her the exclusive care, custody, and control of the aforesaid minor children. On December 31, 1885, she was married to J. F. Frey, who predeceased her. To this union were born four children, one of whom is dead, the other three being parties to this action.

The record is replete with declarations by Mary F. Frey that she had a boy named William, or Willie, who was a baby at the time when she was adjudged insane. To set out these numerous declarations would unduly extend the length of this opinion.

Mrs. Satterlee, sister of William F. Thomas, testified that her brother, the former husband of Mary F. Frey, brought the little girl with him to their home; that her brother said there was a boy, and she has always heard her people (her father's family) talk about it.

On October 15, 1890, the daughter, Annie, wrote her mother a letter, and among other things stated:

"I want you to send me word about my brother if you know anything about him. I think it is about time that he must be pretty near twenty one. I should like to know his address if you have got it. Does he know that he has a sister at all?"

In another letter, in 1892, the daughter wrote her mother:

"I want you to send word if you know where Will is. He must be a young man by this time, for if I remember, he is fourteen months younger than I am, that makes him of age if he is living now."

It will be observed that the foregoing declarations are from the mother, the father, and the sister of the claimant and the general repute or tradition in the family of the father of William F. Thomas. All such declarations are clearly admissible, as coming within the exception to the hearsay rule, for the reasons hereinafter given.

It is shown by the record that Charles and Malinda Painter were husband and wife, and that they resided at Brazil, Indiana, in 1871, at the time when Mary F. Thomas, afterward Frey, was adjudged insane. It appears that, at that time and place, they obtained possession of a boy baby; that the Painters left Brazil, and lived at various places, and located at Shibley's Point, Missouri, where they resided for a couple of years, including 1880; that from Shibley's Point, Missouri, they went to Kansas, where Charles Painter died, December 16, 1883. During all of this time, the boy obtained by the Painters at Brazil, Indiana, was in their custody. Soon after Painter's death, Mrs. Painter and the boy returned to Indiana, taking up their residence at Rockville. Mrs. Painter married the witness James Davis, January 10, 1886. It is shown by the record that the claimant is the boy whom the Painters obtained at Brazil in 1871. There are numerous declarations in the record by Malinda Painter that the claimant is the son of Mary F. Frey, formerly Mary F. Thomas, née Reed, and there is also in evidence a letter of much significance, written by her to Mary F. Thomas, afterwards Mary F. Frey. Mrs. Painter died about five years before this case was tried. Are the oral declarations and the statements in the letter admissible, as coming within the exception to the hearsay rule?

The appellants in their reply argument state:

"All we know as to what Mary Frey did to run that Painter clue down is that she wrote to the Painters, sometime prior to August 24, 1880, and that, on August 24, 1880, Malinda Painter addressed a letter to Mary Thomas at Brazil, which Mary received sometime after August 24, 1880."

In their original argument, they state:

"Our assignments of error and our brief of authorities deal almost wholly with questions of evidence. If the testimony of the Indiana witnesses as to declarations made by Malinda Painter are competent and believable, there is enough evidence in the record to sustain the finding of Judge Clock."

It is thus apparent that, before proceeding further, we should determine the question of the admissibility of the written declarations in the letter hereinbefore referred to, and the oral declarations of Malinda Painter, made to the various witnesses. Malinda Painter reared the claimant, and he resided with her and her husband, Charles Painter, continuously until the time of Painter's death, and thereafter with her, until the time of her remarriage, and then with her and Davis, until the time of the claimant's marriage. Are her declarations as to the relationship of the claimant to the intestate, Mary F. Frey, admissible? It is shown by competent evidence that there was a boy of whom William F. Thomas was the father and Mary F. Thomas the mother. If the claimant has shown by competent evidence that he is that boy, then the relationship and identity become complete. Evidence as to pedigree or relationship may be in the form of individual declarations or in the form of family reputation. 3 Wigmore on Evidence (2d Ed.), Section 1480. The declarant must be shown to be dead; or probably his insanity or absence from the jurisdiction would be sufficient. 3 Wigmore on Evidence (2d Ed.), Section 1481. The situation of the declarant must be such that he had fair knowledge, or fair opportunities for acquiring knowledge, upon the subject concerning which the declaration is made: that is, the person making the declaration must be one having such a connection with the party to whom it relates that it is natural and likely that the declarant is speaking the truth, and that he could not be mistaken. 3 Wigmore on

Evidence (2d Ed.), Section 1486; 22 Corpus Juris 246, Section 233.

" * * * It is necessary that the declarant should have been disinterested to the extent of having no motive which can fairly be assumed to be such as would induce him to state the fact otherwise than as he understood it. The statement must, therefore, be shown to have been made *ante litem motam* * * *." 22 Corpus Juris 246, Section 235.

See, also, *In re Estate of Carroll*, 149 Iowa 617. In the cited case, we said:

"It is sufficient to say that evidence relating to pedigree and genealogy and family history usually consists of hearsay, and presents an exception to the general rule on that subject. Such declarations are received in evidence as being the natural effusions of a party who must know the truth, and who speaks on an occasion when his mind stands in an even position, without any temptation to exceed or fall short of the truth. *Whitlock v. Baker*, 13 Ves. 514. As a general rule, such information or statements concerning which a witness may testify must have antedated the litigation and the controversy, so that they could not have been induced thereby. They must be *ante litem motam*."

The authorities lay down the general rule that, in order for the declaration to be admissible, the declarant must be a relative, either by consanguinity or affinity. 22 Corpus Juris 243. To this general rule there are well recognized exceptions. Wigmore, in his work on evidence, Volume 3, Section 1487, declares:

"The required qualification, then, in general may be supposed to be present whenever (following the judicial phrases) there are found persons 'likely to know the facts,' 'having an opportunity to know the facts,' or 'holding a relation rendering it very probable that he would learn them truly.' If this is so, the line need not be drawn strictly at relatives."

In *Alston v. Alston*, 114 Iowa 29, one of the questions involved was whether the plaintiff was the son of the deceased. He was not adopted, but was reared in the family of Mr. and Mrs. DeFrance, both of whom were dead. Much of the evidence as to paternity was objected to on the grounds that it was hearsay, and not admissible. We there said:

"But it is well settled that some evidence which would in general be excluded as hearsay is admissible on the subject of relationship. Prof. Greenleaf states that hearsay in regard to relationship is admitted in cases of pedigree, the principal question in such cases being that of the parentage or descent of the individual * * * . And while he states the rule in general as limiting evidence of declarations on this subject to those of deceased persons who were related by blood or marriage to the person in question, it is evident that the relationship insisted upon is that which will give rise to an interest justifying the assumption that the person who made the declaration would know the fact by general reputation in the family and among persons likely to be reliably informed. * * *. With reference to the declarations of Mr. and Mrs. De France, they do not come strictly within the rule requiring such declarations to be by a relative by blood or marriage, but it was their family in which plaintiff was brought up, and we hold that their declarations are admissible by reason of such relationship."

If the declarations of Mr. and Mrs. DeFrance in the cited case, as to the paternity of the plaintiff, were admissible, for the very same reason the declarations of Malinda Painter are admissible in the instant case, to prove the maternity of the claimant. The Painters resided at Brazil, Indiana, in 1871. The population of the town at that time is shown to have been only 2,186. Mary F. Thomas, the intestate, resided there at the time of her commitment to the asylum. Mrs. Painter had reasonable opportunity to know that Mary F. Thomas was the mother of the baby boy who came into her possession at that time. She is dead. The declarations are *ante litem motam*. She reared the boy, and, within the exception to the hearsay rule, as declared by us in *Alston v. Alston*, supra, her declarations as to the relationship of the boy are admissible in evidence.

The claimant has gone by the name of Painter, since coming into the Painter family. He testified that Malinda Painter, shortly after the death of Charles Painter, told him that his mother was a woman that went insane, and his father had not provided for her, and that they (the Painters) picked him up and took him in; that his name was Thomas; that the Painters and his mother lived at Brazil, Indiana, at that time. The Painter Bible was introduced in evidence, and in the writing of

Malinda Painter appears an entry giving the birth of the claimant as July 12, 1870.

James Davis, who married Malinda Painter on January 10, 1886, testified that, during the courtship, Mrs. Painter told him that they had gotten this boy in Brazil; that she had reared him from a baby; that the name of the parents was Thomas, Mrs. Thomas being a Reed; that the mother had gone insane. He further testified that he, himself, knew the father of Mrs. Thomas, who was at one time sheriff of Clay County, Indiana. He also testified to similar declarations made after their marriage.

Mrs. Pittman testified that she is a cousin of Malinda Painter's; that the Painters lived at Brazil, Indiana; that, when they lived in Brazil, they took a child and reared it; that the boy's name was Willie.

Another witness testified that Mrs. Painter told her that the boy's mother had lost her mind.

Levina Holston, a cousin of Mary F. Thomas's, a girl living with her parents, some miles from Brazil, at the time when Mrs. Thomas went insane, testified as to the fact of the desertion of Mrs. Thomas by her husband when the boy was a mere baby; that, a couple of months after the insanity proceedings, as to which at that time her family was not informed, her uncle, Levi Reed, long since dead, came to the home of her parents, and asked them if they would take care of the boy until he became large enough so that he could; and that, her parents consenting, he went to Brazil to get him, and reported back that the Painters had gotten him, and had left Brazil; that she knew at that time that Mary F. Thomas had a baby boy; that, after her cousin, Mary F. Thomas, got out of the asylum, she visited in her family at various times, and said that the Painters had her boy. The giving of the aforesaid testimony by the witness Holston is not assigned as error.

Mrs. Ledford, residing in Missouri, testified that she knew the Painters when they resided at Shibley's Point, Missouri; that she resided about 200 yards from them; that Mrs. Painter told her the name of the mother, but that she had forgotten it; and that the boy's real parents lived in Brazil, Indiana.

There was introduced in evidence a letter written by Malinda Painter to Mary F. Thomas at Brazil, Clay County, Indiana. It was written from Shibley's Point, Adair County, Mis-

souri, and bears date August 24, 1880. The writer therein states that she is glad to hear from her, and in answer to her inquiry about the little son Willie Thomas, states that she has a boy ten years old last month, and:

"i ges he is the little son you want to no something about— it seems miti strange for eney one to want to claim my little son that i have raised from 10 months to 10 years i expect he seames near to me at present than eney one else at the present all tho im glad you respect him annuf to inquire after him. He is a mite nice little boy."

The writer further states that the boy "knows no ma or pa but she and Mr. Painter;" that they have no children; that she has his picture enlarged; that she is "real proud of the boy." Attached to the deposition of James Davis, the second husband of Malinda Painter, is a large photograph of a boy, which both Davis and the claimant testified is a likeness of the claimant. It has been framed, and, Davis testified, has been kept hanging in a frame in their home, and was produced by him, identified, and made a part of his deposition. The claimant testifies that this photograph was kept hanging on the wall in the Painter home, and after Mrs. Painter's second marriage, was hanging on the wall of the Davis home.

After the death of William F. Thomas in Nebraska, in 1923, parties interested in the settlement of his estate published in one of the papers at Boone an inquiry as to the whereabouts of his daughter (Annie). Mrs. Satterlee, the sister of Thomas, made known to Mrs. Luther, a cousin of Frey's, the husband of Mary F. Frey, the fact that information was wanted relative to the Thomas children; and Mrs. Luther went to one of the daughters-in-law of Mary F. Frey for assistance. Mary F. Frey produced for the daughter-in-law a letter from the husband of the daughter, announcing her death, and the aforesaid letter written by Malinda Painter, relative to the boy, Willie. From the information thus obtained by the daughter-in-law, a memorandum was prepared by her, giving the name of the boy, stating that he was raised by Mr. and Mrs. Charles Painter, Shibley's Point, Adair County, Missouri; that he "knows no other pa and ma;" that no adoption was made out; and that he would be 54 years old this July, if living. This memorandum was prepared in 1924, and delivered to the parties making inquiry.

It appears that, in later years, the mother did not know the whereabouts of the boy; but this is probably due to the fact that the Painters soon left Shibley's Point, Missouri, and never returned, going from there to Kansas, and a year or so after Painter's death, Mrs. Painter and the boy went to Rockville, Indiana.

It would be useless to more fully set out the evidence. We hold that the evidence against which objection is made, is admissible, and that the conclusion of the trial court is fully sustained by competent evidence. We are convinced that Mary F. Frey had a baby boy at the time when she was adjudged to be insane, and that the claimant is that boy. Upon her visits to the Holston home in Indiana, before coming to Iowa, she declared that the Painters had her boy. She has kept the aforesaid letter and envelope throughout all the years; and upon her former husband's death, when his estate was in process of settlement, produced the same for the information which it might afford in enabling the discovery of the boy. After the mother's death, the letter was delivered by the Frey children to the administrator, and this letter was produced in court before the trial of this case, under order of the court.

The trial court found that the claimant is one of the heirs of Mary F. Frey, deceased. We concur in the trial court's findings, order, and judgment.—*Affirmed.*

ALBERT, C. J., and EVANS, FAVILLE, KINDIG, and GRIMM, JJ., concur.