IN RE ESTATE OF JOHN CORBIN.

LOUISA GRACE O'CONNELL et al., Appellees, v. STATE OF IOWA, Appellant.

No. 46579.

FEBRUARY 6, 1945.

John M. Rankin, Attorney General, Harold H. Newcomb, First Assistant Attorney General, and Kenneth F. Neu, Assistant Attorney General, for appellant.

John A. Cunningham and John J. Kintzinger, both of Dubuque, for appellees.

MANTZ, J.—This is a law action brought by Louisa Grace O'Connell, Delia Annie Regan, Grace Kathleen McIntosh, Thomas Stevens Corbin, and Eric Mullanny, in which they claim to be heirs at law of John Corbin, deceased, who died December 25, 1929, at Dubuque, Iowa, a resident of that county, and whose estate was there opened and is now pending. They claim their right to inherit as being the sole and only heirs at law of Stephen (Steve) Corban, an alleged brother of John Corbin, who died a resident of Cork, Ireland, in 1901. They ask that the property of the estate be turned over to them as the sole heirs at law of the deceased.

There was a resistance filed by the legal representative of the deceased, and by the State of Iowa, wherein the application of the claimants to said heirship was denied, and asking that the property be held to belong to the State of Iowa under the laws relating to escheated property. The case was submitted to a jury, who found for claimants; judgment was rendered thereon, and the State appeals.

The action is a contest between claimants on the one hand and the State of Iowa on the other as to which is entitled to the ownership of the property left by the deceased, John Corbin. Claimants aver their right thereto by reason of their relationship to the deceased through their father, Stephen Corban, who they claim was a brother of John Corbin. The State claims that John Corbin died without heirs, that the property became escheat, and as such belongs to the State of Iowa.

There is no real estate involved. According to the inventory, the value of the property was about $11,000, cash and securities. There was no will.

Before discussing the matter we will set forth a few of

the pertinent facts appearing in the record. At his death John Corbin was seventy-six years of age. He never married. He left Ireland in 1871, came to America, and to Dubuque about twenty-nine years prior to his death. So far as was known, he had no relatives in America. For a number of years he was employed as a watchman of government property at Dubuque. He had few close friends. He never owned a home and roomed and boarded at various hotels and private homes. On January 18, 1929, he was naturalized in the district court of Dubuque, Iowa. In his application for citizenship, filed some years before, he gave his age as sixty-two, stated that he was born in Cork, Ireland, in March 1853, that he came to America in 1871, and was then a subject of Great Britain.

Following his death and the opening of his estate search was made for his heirs. Knowing of his birthplace, advertisements were run in newspapers at Cork, Ireland. Sometime later claimants filed application asserting heirship to the property of deceased through his relationship to their ancestor, Stephen Corban, a brother.

Practically all of the evidence taken was either by records or depositions. The latter were taken under stipulation, wherein it was agreed that all objections thereto were waived save those relating to materiality, relevancy, or competency. Some of these depositions were on file a long time before the trial. No objections were made to any of them or to any part thereof until the time they were offered, when objections to questions and answers were made by the State. No motion to strike or to suppress was made by the appellant.

The matter of the competency of witnesses or testimony offered to which objection was made will be discussed later in this opinion.

The appellant in taking this appeal has asked reversal on the claim that in four particulars the court committed error. Briefly stated, the four claimed errors are as follows:

1. In the admission of incompetent evidence of two of claimants, O'Connell and Corbin, and witness O'Herrin.

2. In the statement of the issues.

3. In the giving of the second instruction without evidence, and the failure of the court to instruct on escheat.

4. Insufficiency of the evidence to warrant the court in submitting the case to the jury.

We will discuss such claimed errors in the order above stated.

■ I. The first error urged and argued by appellant relates to the testimony of certain witnesses offered by appellees to sustain their claim. Certain claimants, to wit, Louisa Grace O'Connell and Thomas Stevens Corbin, gave testimony as to their relationship to each other, to Stephen Corban, also to the relationship between John Corbin and their father, Stephen Corban, and also to John Corbin, deceased. Both based their testimony upon knowledge and information obtained by reason of the family relationship. None of them claimed to have known John Corbin personally, or to have seen him, or to have received any communications from him. However, some of them testified that in the family discussions they had heard their father and mother talking of John Corbin's coming to America many years before and of their having heard from him from that country; that there were talks as to correspondence had with John Corbin after he came to America. We think that from the evidence it might be fairly inferred that his coming to America and the correspondence, between them were matters discussed within the family. The witnesses based their answers and opinions upon such matters.

Appellant objected to this testimony as being hearsay and incompetent. The rule relating to the rejection of hearsay is so well known that no citation of authority is necessary. However, it is equally well known that to the rule rejecting hearsay testimony there have long existed certain well-recognized exceptions. One of these exceptions relates to family history, traditions therein, and pedigree. There exists ample and well-recognized authority to sustain the claim that such evidence as given came within the exception above noted. We desire to quote from 1 Jones on Evidence, Fourth Ed., 582, section 312:

"Declarations as to Pedigree. Under another exception to the hearsay rule, declarations may be admitted in evidence to prove family tradition or pedigree, the ground for the admission thereof being the supposed necessity of receiving the statements

in order to avoid a failure of justice, and an assumption that individuals are generally supposed to know and to be interested in those facts of family history about which they converse, and that they are generally under little temptation to state untruths in respect of such matters.''

See, also, Fulkerson v. Holmes, 117 U. S. 389, 6 S. Ct. 780, 29 L. Ed. 915; In re Estate of Hartman, 157 Cal. 206, 107 P. 105, 36 L. R. A., N. S., 530, 21 Ann. Cas. 1302; Eisenlord v. Clum, 126 N. Y. 552, 27 N. E. 1024, 12 L. R. A. 836–838.

On this subject we desire to quote from the language of Lord Eldon, as set forth in Whitelocke v. Baker, 13 Ves. 510, 514, 33 Eng. Reprint 385, 386, as follows:

''* * * declarations in the family * * * all are admitted upon the principle, that they are the natural effusions of a party, who must know the truth; and who speaks upon an occasion, when his mind stands in an even position, without any temptation to exceed or fall short of the truth.''

The principle above enunciated has long been recognized by the leading American authorities. V Wigmore on Evidence, Third Ed., sections 1480–1503; Geisler v. Geisler, 160 Minn. 463, 200 N. W. 742; In re Estate of Frey, 207 Iowa 1229, 224 N. W. 597; 16 Iowa L. Rev. 92. In the Frey case, Wagner, J., made an analysis of various Iowa cases on the subject and cited with approval the case of Alston v. Alston, 114 Iowa 29, 86 N. W. 55, wherein the court quoted the rule laid down by Lord Eldon and above set forth. He likewise quoted 3 Wigmore on Evidence, Second Ed., section 1480. See, also, In re Estate of Carroll, 149 Iowa 617, 128 N. W. 929.

Alston v. Alston, supra, by McClain, J., deals with the question of relationship and pedigree and sets out many author-- ities supporting the rule contended for by appellees, to wit, that a member of a family, a relative, may give hearsay testimony as to relationship and pedigree. See, also, 1 Greenleaf on Evidence, section 103 [sections 114c and 114f].

We are of the opinion that the evidence offered by claimants touching their relationship to deceased, and that pertaining to the relationship of their father to the deceased, was competent and was properly admitted to the jury. In so holding we are

assuming that the appellant was in a position to raise the question in the manner pursued by it. The fact that the deposition was not attacked or a motion made to suppress same raises a serious question as to whether the appellant, under the record, was in a position to raise the question. However, as we hold the offered evidence competent we need not pass upon such question.

The claimants offered testimony of the witness O'Herrin, who claimed to have known John Corbin for years, having worked with him, and who testified that Corbin had told him of a brother, Steve Corbin, of Cork, Ireland; how he would like to return and visit his brother; also that his father was named Stephen Corbin. Over objection that such was hearsay and incompetent the court held that it was admissible. We hold that the ruling was correct. While it was hearsay, yet it comes within the exception above referred to. Certainly a statement of a person as to whether a certain designated person is his father, brother, or other relation, their ages and locations, would come within the exception above discussed.

II. The second error complained of by the appellant is that the court committed an error in advising the jury as to the issues. The specific complaint relates to the statement of the issues to the jury in the following:

"This is a proceeding in which Louisa Grace O'Connell, Delia Annie Regan, Grace Kathleen McIntosh, Thomas Stevens Corbin, and Eric Mullanny, *as nieces and nephews,* children of Stephen Corban, alleged brother of John Corbin, Deceased, filed a petition in this court making claim to the proceeds of the Estate of John Corbin, Deceased, *alleging that they are nieces and nephews* of John Corbin, Deceased, and asking that the Court distribute to them, and each of them, their proportionate share *as said nieces and nephews of John Corbin, Deceased,* in the Estate of the said John Corbin, Deceased." (Italics for emphasis.)

Appellant claims that the statement of the issues "as nieces and nephews, children of Stephen Corban, alleged brother of John Corbin, Deceased," was misleading and in effect told the jury what their answer should be to the question of the relationship of claimants to the deceased.

We are not able to agree with appellant in such claim. The court was simply advising the jury as to the claimed status of appellees. In the same paragraph the jury was told that claimants were "alleging that they are nieces and nephews of John Corbin, Deceased." In the second paragraph of the statement of issues the court advised the jury that the State was resisting the claim of "said alleged heirs," that the State denied their application, and specifically denied "that they are the heirs at law of the said John Corbin, Deceased."

In Instruction No. 1 the court advised the jury that the burden of proof was upon claimants to establish the necessary facts by a preponderance of the evidence. We set out two paragraphs of such instruction:

"2nd. That the said John Corbin was a legitimate brother of Stephen Corban, and that said Stephen Corban is deceased.

"3rd. That the said claimants, Louisa Grace O'Connell, Delia Annie Regan, Grace Kathleen McIntosh, Thomas Stephen Corban, and Eric Mullanny are the children or grandchildren of the said Stephen Corban."

In Instruction No. 2 the jury was told that before they could find for claimants the latter were required to show that John Corbin was a brother of Stephen Corban, father of the claimants.

We do not think the instruction setting forth the issues is open to appellant's criticism. This court on numerous occasions has held that instructions are to be construed together. The trial court in Instruction No. 8 so instructed the jury:

"You are instructed to consider and construe all of the instructions together and apply them as a whole to the evidence in this case."

We are unable to see wherein the language of the instructions would cause the jury to be misled, or wherein such could be construed as a direction to them as to their finding. While citation of authority is hardly necessary, we call attention to several of our most recent pronouncements upon the questions of construction of instructions: In re Will of Behrend, 233 Iowa

812, 10 N. W. 2d 651; Ganzhorn v. Reep, 234 Iowa 495, 12 N. W. 2d 154; Kayser v. Occidental Life Ins. Co., 234 Iowa 310, 12 N. W. 2d 582; Pestotnik v. Balliet, 233 Iowa 1047, 10 N. W. 2d 99; Odegard v. Gregerson, 234 Iowa 325, 12 N. W. 2d 559.

The principles set forth in the authorities cited by appellant in support of this claim of error are correct as an abstract proposition but under the record in this case are without application.

III. The third error complained of by appellant relates to the second instruction given by the court. The specific error claimed is that in said instruction there was introduced for the consideration of the jury an element not in issue and that in connection therewith the court failed to instruct the jury fully on the law of escheat.

Appellant argues that the court erred in instructing the jury on the matter of the legitimacy of John Corbin as related to his father, Stephen Corban, or to this brother, Steve Corban. Appellant claims that there was not sufficient evidence in the record to justify the court in instructing on that subject. We find there was some evidence in the record to the effect that Stephen Corban, paternal grandfather, had an illegitimate son who came to America and that the witness heard relatives talking of this matter about 1872. We find, too, that appellant introduced whatever evidence there was in the record concerning this matter, and having injected this issue into the record, we think that appellant is hardly in a position to complain. With this evidence in the record the court instructed on the question of the legitimacy of John Corbin. Appellant had requested an instruction along that line. While the court refused the specific instruction asked, yet in the instruction given the court instructed the jury along the line desired by appellant. We do not think the court erred in so instructing. Even should it be held error, the appellant, having introduced the evidence and requested the instruction, cannot now be heard to complain. We do not think it would be proper or just to permit appellant to take advantage of its own act. In re Estate of Iwers, 225 Iowa 389, 280 N. W. 579; Odegard v. Gregerson, supra, 234 Iowa 325, 12 N. W. 2d 559;

Buskol v. Van Eman, Iowa, 6 N. W. 2d 147; Campbell v. Ormsby, 65 Iowa 518, 22 N. W. 656.

IV. The final error urged and argued is that the trial court erred in not directing a verdict for appellant when the appellees rested, and also when both sides rested. The specific complaint is that appellees did not establish their claim sufficiently to warrant the court in allowing the jury to pass thereon.

The court, in overruling appellant's motion for a directed verdict, stated:

"It is my opinion that in addition to the testimony of these two claimants, the testimony of Ben Herrin [O'Herrin] is sufficient to allow this case to go to the jury. I therefore overrule the motion of the State for a directed verdict. [State of Iowa excepts.]"

In support of such claim appellant has argued at some length, setting out a part of the evidence and citing various authorities. The trial court held that there was a jury question to be determined and after a careful reading of the record we concur in that holding. There were conflicts in the evidence as to whether Steve Corban (Corbin) had a brother who came to America, and if so, whether John Corbin was such brother. There was likewise dispute as to whether there was a John Corbin, a brother of Steve. Birth records had been lost or destroyed. It is conceded that both Steve Corban and his father, Stephen Corban, lived in Cork, Ireland, and that neither ever came to America. There was evidence on behalf of the State from Ellen Mercer, aged eighty-four, of Ireland. She claimed to be a daughter of Stephen Corban I; that among children born to such Stephen was a son Stephen (Steve), who was the paternal ancestor of claimants. Ellen Mercer denied that Stephen I had a son John. She did testify that she heard her own mother and *her* mother talking to the effect that Stephen I had an illegitimate son who came to America when he was young. Ellen Mercer named the children of Steve Corban and included among those named were most of the claimants. The evidence as to the names, residences, and dates of death of the parents of Steve Corban is not in serious dispute. The record shows that some of the family took the name of Corbin. There is in

the record that from which it might be properly inferred that John Corbin, the deceased, was born in Cork, Ireland, about the year 1853; that he came to America in 1871; that in 1915, at the age of sixty-two, he applied for citizenship in Dubuque County, Iowa; that he had resided in Dubuque county for twenty-five years; that he never married; that he told witness O'Herrin, a close friend and fellow worker, that he would like to return to Ireland, the place of his birth; that he told witness that his folks lived in Cork; that he had there a brother, Steve, or Stephen, that also being the name of his father; that he spoke often of his desire to go back to Ireland and see Steve and family; that he never mentioned having sisters, and said he had but the one brother, Steve. One of the claimants, Thomas Stevens Corbin, of Boston, Massachusetts, testified that he was born in Cork, Ireland, in 1896 and came to America in 1908; that he was the son of Stephen Corban, who died at Cork, Ireland, in 1904; that his mother survived his father; that he remembered the family discussion of the uncle John Corbin's coming to America and of talk of correspondence with him. Claimants, Thomas Stevens Corbin and Louisa Grace O'Connell, when shown a photograph of John Corbin, deceased, testified that it bore a strong resemblance to their father, Steve Corban.

There were some contradictions in the testimony. The deceased came to America in 1871, and being so far removed from his place of birth, it is not at all improbable that the family ties were more or less completely severed. It is also likely that most people who had known him in youth had passed away. Doubtless he was a man who had few close personal friends. The testimony of O'Herrin, a close personal friend, who had worked with the deceased for a number of years, is highly significant. This testimony, under the rule as to pedigree and relationship, was admissible. He testified to some of the matters above set forth. That the deceased said that he had a brother Steve at Cork, Ireland, and that such was the name of his father, would be entitled to considerable weight.

While much of the evidence was not clear and direct, this largely due to the lapse of close to sixty years since the de-

ceased left Ireland, yet it was the best available and we hold that there was enough in the record to generate a jury question.

Many cases have been cited by both parties. We have gone over them and examined others not cited. Practically all of them turn upon the facts. We think that this is true of this case. The jury heard the evidence and it was their province to pass upon the ultimate fact question, and that was, Have claimants shown themselves to be the heirs at law of John Corbin? They answered in the affirmative, and we are bound by their answer, in the absence of error committed at the trial. We find no such error.

No question has been raised as to the propriety of a jury trial. We therefore do not consider that question. The case is affirmed.—Affirmed.

All JUSTICES concur.