**IN THE COURT OF APPEALS OF IOWA**

No. 14-1551
Filed October 14, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DUSTIN JAMES WITT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Wapello County, Annette J. Scieszinski, Judge.

        Dustin James Witt appeals from his conviction of willful injury causing bodily injury.  **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Kelli Huser, Assistant Attorney General, Lisa Holl, County Attorney, and Gary Oldenburger, Assistant County Attorney, for appellee.

        Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

Dustin James Witt appeals from his conviction of willful injury causing bodily injury. He contends the district court erred in denying his motions for judgement of acquittal "as the evidence of the cause of the injuries was ambiguous at best and the complaining witness'[s] testimony was 'impossible and absurd and self-contradictory.'" Because substantial evidence supports the conviction, we affirm.

**I. Background Facts.**

Viewing the evidence in the light most favorable to the State, a rational jury could find the following.

James Seamans testified that on August 4, 2013, he and his two sons were pulling up in front of their house on Tuttle St. and starting to get out of their vehicle. They heard screaming approximately two blocks down the street and noticed a SUV travelling at a high rate of speed. When the SUV got within a block of their house where there was "a pretty good little dip there on the side road," the SUV hit the dip, "went up in the air, came down, bottomed out, [and] shot sparks out from under it." The vehicle turned left, and Seamans heard a yelp. He and his sons walked toward the intersection and "noticed a young lady sat up out of the ditch by the cornfield there. We took off running up there, and she started screaming at us that he was beating her."[1] At that point, the men saw Witt climbing out of the vehicle and yelling at the woman to get back in the vehicle before he hit her again. The left side of the woman's face was swollen

---

[1] Seamans also stated the woman told him at some point she jumped from the vehicle to get away. Witt argued at trial the injuries were caused by the jump from the vehicle rather than by his assault.

and bruised. Seamans intervened, and Witt "wanted to fight us all." While Witt and the men were talking, the woman got in the vehicle and drove away. Witt "started screaming that she was suicidal and how is he going to get home." Seamans's wife called the police while Seamans spoke with Witt.

At about dusk on August 4, Jeffrey Griffiths was at his home (at the Mary and Tuttle intersection) standing by his vehicle when he heard a neighbor yell "slow down." He looked up to see a SUV-type vehicle "bottoming out and it flew by me." He saw the driver, who appeared to be male, "make a swinging motion towards the passenger."

Officer Michael Sieren received a dispatch to return a call to Sarah Steine at a hospital concerning an assault. Officer Sieren called Steine who told him she had been in the process of leaving Witt's residence (with whom she had been having a relationship) at about 9 p.m. when she realized she did not have the keys to her vehicle. Before she could get out of the vehicle, Witt grabbed her by the hair and body, jerked her out of the car, and repeatedly punched her. She told the officer Witt dragged her to the house but she had gotten away and had driven to her husband's residence.

Officer Sieren learned the next day from another officer that they had been in contact with Witt the previous day in response to a report at about 9 p.m. of a vehicle that was driving very recklessly. The officer responding to that August 4 report came in contact with Witt. Witt had been in a vehicle with Steine but she left before the officers arrived. Witt was extremely intoxicated and uncooperative; he would provide no information and was arrested for public intoxication.

Officer Sieren contacted Steine again on August 21. He stated he had been given some "additional information of a different location that some of this had happened," and Steine replied that she had been remembering more things and offered information corroborating what happened on Tuttle. Officer Sieren testified, "Steine stated that due to being hit in the head, she believed she was just remembering more things as time went on."

The nurse who treated Steine at the hospital, Melinda Coleman, testified Steine stated she had been assaulted. Steine named Witt as the assailant and said, "'He kept punching me. He kept punching me.' And when I said—and she said, 'And he drug me, he slapped me, he punched me.' She just kept saying, 'He punched me.'" Coleman noted injuries to Steine's face "mainly around the eye and nose," injuries to her neck, and numerous abrasions, bruises, and lacerations on the left and back side of her body. Coleman testified, "She said that he had drug her out of her vehicle across the yard [on] a paved sidewalk, so as I'm jotting this down, her injuries were consistent with what she was telling me happened to her."

Steine testified about "scuffling" with Witt at his house, about trying to get the keys to her vehicle but Witt got in the vehicle before she did. She stated,

> Everything is kind of bits and pieces. So I was on the ground, and he got in my vehicle. And I had got up and gotten into the passenger seat because I didn't want him to take it. That was my only way to get out of there.
>     Q. You said that you were on the ground. How did you get on the ground? A. I don't know if I fell or if I was knocked down. I'm not sure.
>     Q. So then you got into the passenger side of the truck; right? A. Correct.
>     Q. And what happened at that point? A. He started driving all through town. I'm not sure where we were. We were running

stop signs. He was trying to argue with everybody. He didn't have his lights on. At some point we had hit a dip so hard in my truck that we had caught air, and I remember my head hitting the top of the car like the roof. . . .

After that he repeatedly punched me in my eye and my face, and I have some goose eggs on my forehead from him punching me.

. . . .

Q. Now at that point as he's driving along and hitting you, do you remember anything specifically about where he was hitting you and how that was happening? A. He was punching me on my left side. My right side was towards the passenger door so he couldn't really reach it, and it was just, like, I want to call them rabbit punches, because it kept coming and coming and coming. It was fast, and I just remember, like, going like this and telling him, like, "You're hitting me," hoping that it would stop. And then everything just kind of felt and sounded like it was under water. Like I remember feeling like my face was going to explode. Like I could almost feel the bones breaking, and I felt my forehead swell up. I just remember feeling massive amounts of pain in my face, and he was also punching me in my ribs, and it was—it was my face.

She testified she "somehow managed to drive" to her husband's. "I had asked him to lay down because I was tired, and he jumped out of bed and took me over to the mirror and showed me what I looked like, because I didn't want to go to the hospital."

Q. Once you arrived there at the hospital what happened? A. The nurse asked me if I'd like to press charges, and I said yes. And they examined me and diagnosed me with a fractured left orbital bone, and they didn't notice the nose because my face was so swollen and messed up.

Q. Now what other types of injuries did you have? A. I had, like, I'm not—like cement burns up my back and my sides. I had marks on my wrist. I had fingerprints around my neck from him taking me and shaking me like that while we were outside of his house. There was [sic] bruises and scratches, and just I was marked up everywhere.

Steine acknowledged she had not initially given Officer Sieren information about what had happened in the truck, because "I was still trying to protect Mr. Witt sort of in a way." She acknowledged she had smoked marijuana the day of

the assault.  She also testified that she was missing "bits and pieces" of that night.  She did not remember being in a ditch.  She stated she had been struck in the head several times that night.

The jury found Witt guilty of willful injury causing bodily injury, which was a lesser included offense to one of three charged offenses.[2]  He appeals.

**II. Scope and Standard of Review.**

We will uphold the denial of a motion for judgment of acquittal if there is substantial evidence to support a defendant's conviction.  *State v. Adney*, 639 N.W.2d 246, 250 (Iowa 2001).  Substantial evidence is that which would convince a rational fact finder the defendant is guilty beyond a reasonable doubt. *Id.*  We review challenges to the sufficiency of the evidence for the correction of errors at law.  *Id.*  We give consideration to all of the evidence in the record, not just the evidence that supports the verdict.  *Id.*  However, we view the evidence in the light most favorable to the State.  *Id.*

**III. Discussion.**

The trial court did not err in denying the motion for judgment of acquittal; a reasonable jury could find Witt caused Steine's injuries.  Witt argues Steine's testimony was so contradictory as to be of no probative force.  This claim was not made below.  *See State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004) ("To preserve error on a claim of insufficient evidence for appellate review in a

---

[2] Witt was charged with three counts: count I, burglary in the second degree; count II, willful injury resulting in serious injury; and count III, domestic abuse assault with intent to cause serious injury, all as being a habitual offender.  The jury found Witt guilty of a lesser-included offense of count II; counts I and III were dismissed.

criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal.").

Even assuming this claim is properly before us, witness credibility is generally left to the jury. *State v. Mitchell*, 568 N.W.2d 493, 503 (Iowa 1997). The exception to this rule is if a witness's testimony is extremely absurd, self-contradictory, or impossible, the court should deem the testimony invalid. *Id.* While there are some inconsistences and gaps in Steine's testimony, she was consistent in asserting Witt caused her injuries. The jury could reasonably reconcile any inconsistencies to her head injury or the circumstances of being an abuse victim; she testified she withheld certain details from the police and other persons because she wanted to protect Witt. In addition, Steine's testimony was corroborated by other evidence that Witt caused her injuries, including but not limited to, Jeffrey Griffiths's testimony that he saw the driver in the truck (Witt) swing at his passenger (Steine), Seamans's testimony that he heard Witt tell Steine to get in the car or he would hit her again, the nurse's testimony that her injuries were consisted with being dragged, and the doctor's testimony that the type of facial fracture Steine suffered generally occurred from a "direct trauma" such as "baseball bats, softballs, a punch." Because substantial evidence supports the conviction, we affirm.

**AFFIRMED.**