# IN THE COURT OF APPEALS OF IOWA

No. 17-0308
Filed March 7, 2018

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**MICHAEL ALLEN CASON JR.,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Polk County, Karen A. Romano, Judge.

      The defendant appeals from his conviction for first-degree murder. **AFFIRMED.**

      Mark C. Smith, State Appellate Defender, and Nerissa Nan Jennisch, Assistant Appellate Defender, for appellant.

      Thomas J. Miller, Attorney General, and Darrel L. Mullins, Assistant Attorney General, for appellee.

      Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

Michael Cason Jr. appeals from his conviction for first-degree murder, claiming (1) his motion for new trial should have been granted because the weight of the evidence does not support his conviction and (2) trial counsel provided ineffective assistance.

**I. Weight of the Evidence.**

Cason maintains the weight of the evidence does not support his conviction for first-degree murder. Specifically, he argues there is a lack of forensic evidence linking him to the shooting death of Trenton Washington and maintains the testimony from eyewitnesses—who are inherently unreliable—was even less credible in this case because of the inconsistencies in the statements of the individuals throughout the proceedings and in comparison to each other.

When the defendant files a motion for new trial alleging the verdict is contrary to the weight of the evidence, the district court's analysis "involves questions of credibility and refers to a determination that more credible evidence supports one side than the other." *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). "'The district court has broad discretion in ruling on a motion for new trial,' and thus our review in such cases is for an abuse of discretion." *Id.* (quoting *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003)).

The undisputed evidence established that Washington suffered a gunshot wound to his right thigh, which perforated his femoral artery, ultimately causing his death. At trial, Cason disputed that he was the person who fired the gun.[1]

---

[1] Cason also disputed, in the alternative, whether the State had established the requisite intent and premeditation necessary for a first-degree-murder conviction. Cason has not

Cason questions the jury's apparent reliance on the testimony of eyewitnesses, noting recent academic literature questioning the reliability of such testimony, but here, we believe there is less concern that the testimony is erroneous. First, four separate eyewitnesses identified Cason as the person who shot at Washington and his friend, Kazmond Meade, as they ran away. Each of the eyewitnesses was familiar with Cason before that night. *See* James E. Coleman Jr., et al., *Don't I Know You? The Effect of Prior Acquaintance/Familiarity on Witness Identification*, 36-Apr. Champion 52, 53–54 (April 2012). ("As a general matter, the accuracy of facial recognition and identification increases as a function of familiarity: *ceteris paribus*, people can recognize their own faces better than those of celebrities, the faces of celebrities better than those of acquaintances, and those of acquaintances better than those of strangers."); *cf. State v. Shorter*, 893 N.W.2d 65, 82 (Iowa 2017) (noting that while "[m]any of the most troublesome [eyewitness] cases involve identification of strangers," "[c]areful consideration by counsel of eyewitness identifications extends to identifications of persons known to the witness and not simply to identification of strangers"). Additionally, all four had been spending time with Cason in the park immediately before the shooting occurred.

The four eyewitnesses' testimony differed from each other in some respects—where Cason had obtained the gun, how many shots they heard fired, whether Cason chased after Washington and Meade before opening fire, and how long the group remained at the park after the shooting—but each linked Cason to

___

renewed those arguments on appeal, so we consider only whether the weight of the evidence supports the jury's determination Cason was the shooter.

the shooting. Meade testified he and Washington were in a physical scuffle with Cason, who then walked away and got a gun from one of his friends. Meade testified that as soon as he saw the gun, he and Washington ran away but Cason chased them and began firing. He believed he heard "about seventeen" shots.[2] Jacorey James testified he saw Cason arguing with Meade and Washington in the park before Meade and Washington ran off with Cason chasing them. He admitted he "didn't" or "couldn't" see anything in Cason's hand when Cason gave chase but testified he then heard gunshots—"maybe three." Makayla Walls testified she was at the park when a fight broke out; she denied knowing everyone at the park or remembering who was there but agreed Cason was involved in the fight. During direct examination, Walls testified as follows:

> Q. Was [Cason] fighting? A. Yeah. But I don't know who the other people is. I don't know who they are.
> Q. At some point did you see Trenton Washington with somebody who appeared to be a friend of his? A. Yeah. I think—I don't know. Yeah.
> Q. At some point did you see them run away? A. Yeah.
> Q. Did you see someone chase them? A. No. Not like chased them, like all the way down.
> Q. Did you see someone follow them at all? A. Yeah.
> Q. Who was that? A. It wasn't just one person.
> Q. Pardon me? A. It just wasn't one person that followed them. They didn't get followed. They didn't get chased down.
> Q. Did you see someone with a gun? A. Yes.
> Q. Who had the gun? A. [Cason]
> Q. Did you see Mr. Cason, . . . shoot the gun? A. Yes.
> Q. Did you see who he was shooting at? A. No. But he was shooting—I didn't—no. I didn't see. He was just shooting in a straight direction.
> Q. In the direction of Mr. Washington and his friend? A. Yeah. But I didn't see him shoot them.

---

[2] Police later recovered sixteen shell casings.

Javon Washington[3] testified that on the night in question, he saw Cason having a verbal argument with Trenton Washington and tried to intercede in order to diffuse the situation. Javon saw Cason pull out a gun and flash it around, causing Meade and Washington to take off. Cason then fired a pistol down Sampson Street, where Washington and Meade were running. Additionally, both Javon and Walls testified that the only person they saw fire a gun on the night in question was Cason.

Meade's testimony was inconsistent with what he originally told police officers when he was questioned directly after Washington was taken away in an ambulance. Meade admitted he originally denied knowing who the shooter was when asked by police, testifying he "didn't want no problems" with Cason and was scared. He claimed he identified Cason as the shooter to police the next day because once he learned Washington had died from his injury, he "had to be honest because, you know, it was right thing to do because he ain't there to speak for himself." Cason was able to—and did—ask Meade about the inconsistencies in front of the jury. This is not a case where Meade's testimony was "so impossible, absurd, and self-contradictory" that it should have been deemed a nullity. *See State v. Mitchell*, 568 N.W.2d 493, 503 (Iowa 1997).

Here, four eyewitnesses who were familiar with Cason connected him to the shooting. Although the firearm used was never recovered and the testimony of the eyewitnesses included some minor inconsistencies, we cannot conclude the district court abused its discretion in denying Cason's motion for new trial.

**II. Ineffective Assistance of Counsel.**

---

[3] Though he shares a last name with the decedent, the two are not related. We refer to Javon Washington as Javon in order to prevent confusion.

Cason maintains trial counsel provided ineffective assistance. He argues counsel was ineffective when failing to object to two pieces of inadmissible evidence—evidence related to an inoperable gun recovered by police officers that the crime lab determined was not the gun used in the shooting and evidence of an assault, which involved a functional firearm, committed by Cason within minutes of the shooting of Washington. Cason also maintains counsel was ineffective for failing to inform the jury—either through expert testimony or the use of the appropriate uniform jury instruction—about the limitations of eyewitness testimony.

The record before us is inadequate to decide Cason's claims on direct appeal. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010) (recognizing it is the role of the appellate court to determine if the record is adequate to decide the claim). It does not allow us to determine why defense counsel did not object to the admission of the evidence related to the inoperable gun. The State suggests the evidence may have supported the theory of the defense. Similarly, we have no record why counsel did not choose some means to inform the jury about the limitations of eyewitness testimony. *See Shorter*, 893 N.W.2d at 81–82 (stating that the preparation "for eyewitness identification is an essential responsibility of defense counsel" and noting academic research suggesting erroneous eyewitness testimony is the "most frequent cause of erroneous convictions" (citation omitted)). When the record leaves a question as to whether an action—or inaction—by counsel was a matter of strategy, we preserve the claim for possible postconviction relief. *See State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015) ("We prefer to reserve such questions for postconviction proceedings so the defendant's trial counsel can defend against the charge."); *see also State v. Ondayog*, 722 N.W.2d

778, 786 (Iowa 2006) ("[W]e cannot automatically assume every alleged misstep was a reasonable strategy simply because some lawyer, somewhere, somehow, under some circumstances at some time would have done such a thing.").

As we have determined the record is inadequate to decide Cason's ineffective-assistance claims, we must preserve them. *See Johnson*, 784 N.W.2d at 198 (noting "the appellate court [has] only two choices when an ineffective-assistance claim is raised on direct appeal: (1) 'decide the record is adequate to decide the claim' or (2) 'choose to preserve the claim for determination under chapter 822'" (citation omitted)).

**III. Conclusion.**

Because we cannot say the district court abused its discretion in determining the weight of the evidence supports Cason's conviction for first-degree murder, we affirm. We preserve Cason's claims of ineffective assistance for possible postconviction-relief proceedings.

**AFFIRMED.**