# IN THE COURT OF APPEALS OF IOWA

No. 24-0371
Filed April 9, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROBERT LEE WILLIAMS JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, David Odekirk,

Judge.


        A defendant appeals his convictions for attempted murder and willful injury

causing serious injury.  **AFFIRMED.**



        Britt Gagne of Gagne Law Office, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant

Attorney General, for appellee.


        Considered without oral argument by Tabor, P.J., and Schumacher and

Chicchelly, JJ.

**SCHUMACHER, Judge**.

Robert Lee Williams Jr. appeals his convictions for attempted murder and willful injury causing serious injury. He challenges two of the trial court's evidentiary rulings and asserts that insufficient evidence was presented to support the convictions. Upon review, we affirm.

## I.    Background Facts and Prior Proceedings

A reasonable jury could glean the facts below from evidence presented at trial. Williams arrived at his sister's house in Waterloo on July 31, 2020. Williams, who had to work later that day, was going to his sister's house to shower as well as to check on his sister who had been shot and had contracted COVID-19. According to Williams, as he was attempting to get his sister to answer the door, he was approached by Tony Campbell.

Williams and Campbell were both members of a "clique" called Chopper City. Williams described his prior knowledge of Campbell as "violent" and "aggressive." Williams believed that Campbell was connected to the shooting of his sister and had poisoned his brother.[1] At trial, Williams testified that when he recognized that the individual approaching him was Campbell, his thoughts were, "like, damn, man, more bullshit because our—what happened three weeks prior to that with my brother and my sister being shot when he was at her house. Like, don't want some more drama." According to Williams, Williams sat down on the porch to "try to diffuse the situation."

---

[1] In our opinion, we refer to this individual as Williams's brother, although Williams revealed in his law enforcement interview that he considered this individual his brother because they were raised together.

But Campbell said that Williams stopped Campbell as Campbell was on his way to his brother's house. Campbell could not recall how their interaction began but testified that Williams was standing outside the sister's house and called Campbell over. Campbell said it was Williams who initially brought up Williams's brother. Despite this, Campbell said he kept talking with Williams because Campbell was looking to "kick it and party."

The two men stayed outside the residence for some time "doing drugs and drinking." Later, Campbell and Williams left looking for cocaine and cigarettes. Campbell stated he had been up for nearly three days doing cocaine by this point.

Williams testified he became aware Campbell was armed when, while in the car, Campbell pulled out a gun and stated, "I don't care whoever got a problem with me. Whatever it's going to be, I'm going to handle that. I'm going to do this. Whatever somebody got smoke with me, let me know, I'm going to do this." Campbell denied ever making these threats and denied showing Williams his gun. Williams also had a weapon, although he said he did not make Campbell aware of that fact.

After making several stops, they returned to Williams's sister's home, where another individual, Patrick Sallis, joined them. Sallis began to confront Campbell about William's brother. Campbell testified he felt boxed in by Sallis and Williams. Campbell also testified that while he was talking to Sallis, Williams disappeared and then reappeared from behind a garage with his gun drawn, ordering Campbell to put his hands up, and then shooting Campbell in the face from point-blank range. Campbell stated that as Williams shot him in the face, Williams said, "You shot my sister, you tried to poison my brother." But Williams testified he only shot Campbell

after Campbell reached for his gun and after he heard Campbell remark, "I'm about to get shooting motherfuckers back here." Williams continued to shoot as Campbell ran away.

Campbell ran to the liquor store where the clerk called for assistance. Campbell said after he left the liquor store he went back out to "try to get my lick back, . . . like, you know, I'm trying to shoot one of them too." According to Campbell, with this aim in mind, he fired another eight or nine shots after leaving the store. Eventually, law enforcement recovered six shell casings from William's gun but only one casing from Cambell's weapon.

Williams was apprehended several weeks later. His statements to the detectives differed from his trial testimony. When interviewed, Williams told law enforcement that it was his intent to shoot and kill Campbell. Williams did not mention firing at Campbell in self-defense or that he felt threatened by Campbell. Williams said after his sister and his brother got hurt, it made him "snap out." And Tony Campbell was shot because of Williams's belief that Campbell had hurt his brother and sister. "That's why he got hurt." Williams also said that on the day of the shooting, Williams "played like his friend," that he "played it cool. [Campbell] didn't know I had a gun." He added, although Sallis was unaware of what was to happen, Sallis "was his distraction." Williams added, "Y'all just need me. Y'all just getting other people to have it. But I'm letting y'all know. Y'all don't need to do that. This is what it is. Over. Y'all got me. I did it. It's the truth. I did it."

When initially interviewed, Campbell stated he misled law enforcement because of the "unwritten code to the street" of "no snitching." Campbell told

officers that he had been injured in a robbery. Williams was later identified as the shooter.

Williams was charged by trial information with attempted murder, willful injury causing serious injury, felon in possession of a firearm, and a prohibited person in possession of a firearm. Williams filed both a self-defense and an intoxication-defense notice.

A six-day jury trial began in December 2023, with the jury hearing testimony from seventeen witnesses, including Williams who testified in his own defense. Over twenty exhibits were admitted into evidence. Among the evidence were videos of the shooting and a law enforcement interview with Williams. The jury convicted Williams on all four counts as charged.

On appeal, Williams only challenges the convictions for attempted murder and willful injury causing serious injury. He challenges two of the district court's evidentiary rulings and the sufficiency of the evidence to support the challenged convictions.

## II.     Standard of Review

We review district court decisions on the admissibility of evidence for an abuse of discretion. *State v. Dessinger*, 958 N.W.2d 590, 597 (Iowa 2021). We apply the same abuse-of-discretion standard to the district court's evaluation of the probative value and prejudicial effect of impeachment evidence. *State v. Redmond,* 803 N.W.2d 112, 117 (Iowa 2011). An abuse of discretion occurs when the court exercised its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Roby*, 495 N.W.2d 773, 775 (Iowa 1992) (citations omitted). If the ground or reason is not supported by substantial

evidence or is based on an erroneous application of the law, it is untenable. *Graber v. City of Ankeny,* 616 N.W.2d 633, 638 (Iowa 2000).

We review sufficiency-of-the-evidence claims for correction of errors at law and will uphold the jury's verdict if it is supported by substantial evidence. *State v. Mathis*, 971 N.W.2d 514, 516 (Iowa 2022).

**III.    Analysis**

Williams challenges two evidentiary rulings from the district court. He first asserts the district court abused its discretion by prohibiting testimony from the defense that Campbell was known by the nicknames "T-Murder" or "Murder." As to the second evidentiary challenge, Williams argues the district court abused its discretion in allowing the defendant to be cross-examined about prior convictions. Williams also challenges the sufficiency of the evidence supporting both challenged convictions. We address each claim in turn.

**A.    Evidentiary Rulings**

**1.    Nicknames "T-Murder" or "Murder"**

Williams sought to admit evidence of Campbell's nicknames, "T-Murder" or "Murder," in support of his justification defense. The district court addressed this issue on the first day of trial, ordering preliminarily that the use of the nicknames were "off-limits" but advising that the issue could be revisited later. Williams sought to introduce the nicknames at trial, and an offer of proof was made. Following the offer of proof, the court ruled that the use of the nicknames was prohibited but clarified that Williams could discuss Cambell's acts preceding July 2020.

Our court has previously addressed a challenge to the use of a nickname and found no abuse of discretion when the trial court determined the nickname

was more prejudicial than probative. *See State v. Tyson*, No. 13-0272, 2014 WL 2346237, at *7 (Iowa Ct. App. May 29, 2014) (finding no abuse of discretion when district court's ruling that the use of the nickname "Devil Child" was more prejudicial than probative).

We find no abuse of discretion in the district court's determination that the use of the nicknames "T-Murder" or "Murder" was more prejudicial than probative. *Cf. United States v. Yuot*, No. CR 07-4091-MWB, 2008 WL 2857144, at *5 (N.D. Iowa July 23, 2008) (discussing Eighth Circuit Court of Appeals cases dealing with use of an alias and recognizing "[i]n some cases, the use of a defendant's irrelevant nickname to suggest his bad character or unsavory proclivities may be prejudicial" (quoting *United States v. Delpit*, 94 F.3d 1134, 1146 (8th Cir. 1996)) (alteration in original)). And here, the district court made clear that Williams was allowed to testify about his knowledge of Campbell's reputation for violence, to the exclusion of the use of the nickname.

**2. Prior Convictions**

Williams challenges the trial court's admission of evidence of Williams's four aggravated misdemeanor convictions from 2014 and a felony conviction from 2023. This challenge implicates the application of Iowa Rule of Evidence 5.609, which in relevant part states:

> a. *In general.* The following apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
> (1) For a crime that in the convicting jurisdiction was punishable by death or by imprisonment for more than one year, the evidence:
> (A) Must be admitted, subject to rule 5.403, in a civil case or in a criminal case in which the witness is not a defendant.

(B) Must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant.

(2) For any crime regardless of the punishment, the evidence must be admitted if the crime involved dishonesty or false statement.

Iowa R. Evid. 5.609(a). The State asserts the evidence was admissible under rule 5.609(a)(1)(B) and argues the probative value outweighed any prejudicial effect.

The State's cross-examination of Williams concerning the convictions was limited to the following:

Q: Mr. Williams, you were convicted of four aggravated misdemeanors back in 2014, correct?
A: Correct.
Q: And you were convicted of one felony in 2023, correct?
A: Correct.

We do not find this questioning to be improper. First, the State did not "elicit great detail" about Williams's prior acts. *See State v. Rodriquez*, 636 N.W.2d 234, 243 (Iowa 2001). The State did not question Williams about the details of the misdemeanors or felony. Second, the State was required to prove that Williams was a felon or a person who could not possess firearms. Prior to Williams's testimony, the parties filed a joint stipulation read to the jury that admitted Williams was a felon. As such, the question about the felony conviction was cumulative to evidence already in the record.

To be certain, the jury knew a great deal about Campbell's criminal history. The jury learned that at the time of his testimony in this trial, Campbell was housed in a federal facility because of a conviction for being a felon in possession of a firearm, which arose out of the July 2020 incident. The jury also knew Cambell was twice convicted of second-degree burglary and had two additional felony

convictions. The jury here was required to find either Williams or Campbell more credible. We conclude that the prejudicial effect of the limited admission of Williams's criminal history was not outweighed by any probative value.

**3.      Sufficiency of Evidence**

Williams challenges the sufficiency of the evidence supporting the convictions for attempted murder and willful injury causing serious injury.

For the jury to convict Williams on the charge of attempted murder, the jury was instructed that the State had to prove these elements:

> 1. The defendant committed an act upon another person.
> 2. That by that act, the defendant expected to set in motion or force a chain of events which will cause or result in death of the other person.
> 3. That when the defendant acted, he specifically intended to cause the death of the other person.
> 4. That the defendant acted without jurisdiction.

For the jury to convict Williams on the charge of willful injury causing serious injury, the jury was instructed that the State had to prove the elements below:

> 1. The defendant committed an act upon another person.
> 2. In performing that act, the defendant specifically intended to cause a serious injury upon the other person.
> 3. That the defendant's actions caused a serious injury.
> 4. That the defendant acted without justification.

Substantial evidence is defined as evidence that is sufficient to "convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022) (quoting *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018)). In making this determination, we view the evidence "in the light most favorable to the State, including all reasonable inferences that

may be fairly drawn from the evidence." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (quoting *State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002)).

As to each of the convictions, Williams challenges only the fourth element— that he acted without justification. Williams's argument on the sufficiency of the evidence zeros in on Campbell's credibility. We begin by stating, as we often have, that it is the jury's role, not ours, to resolve any inconsistencies in witness testimony and to weigh the evidence presented. *See State v. Mitchell*, 568 N.W.2d 493, 503 (Iowa 1997); *State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995).

The jury heard differing versions of the shooting incident from Campbell and Williams. The jury also heard from law enforcement concerning the investigation of the shooting. The jury could weigh the evidence and judge the credibility of each of the witnesses. The jury was also able to view video footage of the shooting and the law enforcement interview of Williams. On this record and based on the evidence presented, the jury could conclude that Williams did not have justification to shoot Campbell. We find sufficient evidence in the record to support each of the challenged convictions.

## IV.    Conclusion

We discern no abuse of discretion in the district court's evidentiary rulings regarding Campbell's nickname or the use of Williams's prior convictions. And sufficient evidence supports both challenged convictions. Accordingly, we affirm.

**AFFIRMED.**